UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

_____

In re:  In re:
        Elizabeth A. Wirth

                                        Case No.:  18-26528-bhl
                                        Chapter 13

                Debtor

_____

### PORT WASHINGTON STATE BANK OBJECTION TO CHAPTER 13 PLAN
_____

Port Washington State Bank ("PWSB") by its attorney Joseph E. Fenzel, S.C. OBJECTS

to the proposed Chapter 13 Plan. The proposed Plan at page 2-3, provides that Port Washington

State Bank secured claim will be paid "directly" at the rate of $206.00 per month.


**Basis for Objection.**  The Plan Violates Section 11 U.S.C. 1322 ( c) as It Improperly Attempts
to Modify the Rights of PWSB under its mortgage secured only by the Debtors' Primary
Residence and Cannot Be Confirmed. The note matured two days after the filing. The Chapter 13
plan does not provide for payment of the amount due over the term of the plan in equal
payments.  11 U.S.C. § 1325(a)(5)(B)(iii)(I).

In support of its objection, PWSB shows to the Court as follows:

1.        PWSB is the owner and holder of a Mortgage Note from the Debtor dated July 17,

2013. A copy of the Note is attached as **Exhibit 1** and incorporated by reference. By agreement,

the payment date was changed to the 4th of each month in July 2014. The Note matured on July

4, 2018 and was not paid. The sum of $21,074.83 is due. A copy of the Note Payoff as of August

23, 2018 is attached as **Exhibit 2** and incorporated by reference.

Joseph E. Fenzel, S.C.
757 N. Broadway, Suite 201
Milwaukee, WI 53202
(414) 224-1601
e-mail: jfenzel@fenzellaw.com

2.      The Note is secured by a first Mortgage dated July 17, 2018 on property at 988 Knollwood Rd., West Bend, WI 53095 believed to be the Debtor's primary residence. See Debtor's Schedule C, page 1. Claims homestead exemption. The Mortgage was recorded on July 22, 2008 in the Office of the Register of Deeds for Washington County on July 22, 2008 as Document No. 1197275. A copy of the Mortgage is attached as **Exhibit 3** and incorporated by reference.

3.      PWSB does not consent to the Plan.

4.      As stated above, the proposed Chapter 13 Plan payment of $206.00 violates 11 U.S.C. §1322 (c ) (2) which prohibits modification of the rights of a holder of a secured claim, secured only by a security interest in the debtor's primary residence and requires full payment over the term of the Plan.

5.      Additionally, the proposed plan does not provide for payment of the amount due over the term of the plan in equal payments.  11 U.S.C. § 1325(a)(5)(B)(iii)(I).

WHEREFORE, Port Washington State Bank requests that the Objection to the Chapter 13 Plan be sustained; that confirmation of the Plan be denied and that the Court provide Port Washington State Bank with such other and further relief as may be just and equitable under the circumstances.

Dated: September 6, 2018

Joseph E. Fenzel, S.C.
s/ Joseph E. Fenzel
_____
Joseph E. Fenzel (SBN #01008793)

Joseph E. Fenzel, S.C.
757 N. Broadway, Suite 201
Milwaukee, WI 53202
414-224-1601
e-mail: jfenzel@fenzellaw.com

2

## CERTIFICATE OF SERVICE

The undersigned certifies that: On the 6th day of September, 2018, he electronically filed the attached Objection to Chapter 13 Plan this Certificate and that copies of these documents were served by electronic filing to ECF participants.

s/ Joseph E. Fenzel

_____

Joseph E. Fenzel

Joseph E. Fenzel, Esq.
Joseph E. Fenzel, S.C.
757 N. Broadway, Suite 201
Milwaukee, WI 53202
(414) 224-1601
e-mail: jfenzel@fenzellaw.com

© 2012 Wisconsin Bankers Association/Distributed by FIPCO®

**MORTGAGE NOTE**

(Do not use for a loan of $25,000 or less to individual(s) for personal, family or household purposes unless the loan is secured by a first mortgage or equivalent security interest.)

Boxes checked are applicable.
Boxes not checked are inapplicable.

Elizabeth A Wirth _____ July 17, 2013 ___ $ 27,927.19
(MAKER(S))                                      (DATE)

**1. Promise to Pay and Payment Schedule.** I promise to pay to the order of Port Washington State Bank - Port ____ ("Lender")
at 206 N. Franklin Street, Port Washington _____, Wisconsin, the principal sum of $ 27,927.19
plus interest on the unpaid principal balance, according to the following schedule:
**59 equal payment(s) consisting of principal and interest, in the amount of $206.48 each, beginning on August 17, 2013 and continuing monthly thereafter, and one (1) final payment consisting of the unpaid principal and all accrued interest remaining due on July 17, 2018.**

Lender is under no obligation to refinance the final payment at maturity.

**2. Interest.** Interest shall accrue before maturity (whether by acceleration or lapse of time) at the stated interest rate(s) identified in section 2(a), (b) or (c) below (each a "stated interest rate"), as applicable, on the unpaid principal balance, calculated as provided in section 2(f) or (g) below:
[Check (a), (b) or (c); only one shall apply.]
(a) ☒ Fixed Interest Rate. _____ 3.990 _____ %
(b) ☐ Stepped Fixed Interest Rate. The stated interest rate is ____ n/a ____ % until ____ n/a ____ and ____ n/a ____ % thereafter.
(c) ☐ Variable Interest Rate. The stated interest rate is variable and will adjust to equal the Index Rate (as defined below), ☐ plus ☐ minus ____ n/a ____ percentage points. However, the stated interest rate shall not exceed ____ n/a ____ % and shall not be less than ____ n/a ____ % and until the first change date described below the stated interest rate shall be ____ n/a ____ %. The stated interest rate shall be adjusted on the change dates provided below. The "Index Rate" is: n/a

The Index Rate may or may not be the lowest rate charged by Lender. The stated interest rate shall be adjusted on the following change dates:
n/a

If the Index Rate ceases to be made available to Lender during the term of this Note, Lender may substitute a comparable index. ☐ The stated interest rate will never be increased or decreased on any single change date by more than ____ n/a ____ percentage points from the rate of interest in effect immediately prior to that change date. Lender may decline to implement in full or in part any authorized increase in the stated interest rate, and such increase declined by Lender may thereafter be used either to offset any subsequent decrease in the Index Rate or to supplement any subsequent increase in the Index Rate on any change date.

(d) **Payment Modification.** If section 2(b) or (c) above is checked, an adjustment in the stated interest rate will result in an increase or decrease in (1) ☐ the amount of each payment of interest, (2) ☐ the amount of the final payment, (3) ☐ the number of scheduled periodic payments sufficient to repay this Note in substantially equal payments, (4) ☐ the amount of each remaining payment of principal and interest so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date, (5) ☐ the amount of each remaining payment of principal and interest (other than the final payment) so that those remaining payments will be substantially equal and sufficient to repay this Note by its scheduled maturity date based on the original amortization schedule used by Lender, plus the final payment of principal and interest, or (6) ☐ _____.

In addition, Lender is authorized to change the amount of periodic payments if and to the extent necessary to pay in full all accrued interest owing on this Note. I agree to pay any resulting additional payments or amounts.

(e) **Interest After Maturity.** Interest shall accrue on unpaid principal and interest after maturity (whether by acceleration or lapse of time) until paid ☐ at the stated interest rate under section 2(a), (b) or (c) above, as applicable, plus ____ n/a ____ percentage points ☒ at the stated interest rate of _ 3.990 _ %, calculated as provided in section 2(f) or (g) below.
[Check (f) or (g); only one shall apply.]
(f) ☒ **Interest Calculation (Actual Day).** Interest will be calculated by applying a daily interest rate for the actual number of days interest is owing, up to 365 days in a full year or 366 days in a full leap year. The daily interest rate will be calculated as follows:
[Check (1) or (2); only one shall apply.]
(1) ☐ **360 Day Rate Calculation.** The daily interest rate will be calculated on the basis of a 360 day year, which means that it is calculated by dividing the applicable stated interest rate in section 2(a), (b) or (c), above, as applicable, and in section 2(e), above, by 360. I understand and agree that calculating the daily interest rate using a 360 day year means the actual annual interest rate in a 365 day year and in a 366 day leap year is higher than the stated interest rate in section 2(a), (b) or (c), above, as applicable, and in section 2(e), above.
(2) ☒ **365 Day Rate Calculation.** The daily interest rate will be calculated on the basis of a 365 day year, which means that it is calculated by dividing the applicable stated interest rate in section 2(a), (b) or (c), above, as applicable, and in section 2(e), above, by 365. I understand and agree that calculating the daily interest rate using a 365 day year means the actual annual interest rate in a 366 day leap year is higher than the stated interest rate in section 2(a), (b) or (c), above, as applicable, and in section 2(e), above.
(g) ☐ **Interest Calculation (30/360).** Interest will be calculated by applying the applicable stated interest rate based on a 360 day year, counting each day as one-thirtieth of a month and disregarding differences in lengths of months and years.

**3. Other Charges.** If any payment (other than the final payment) is not made on or before the ____ 15th ____ day after its due date, Lender may collect a delinquency charge of ____ 5.00 ____ % of the unpaid amount. I agree to pay a charge of $15.00 ____ for each check or electronic debit presented for payment under this Note which is returned unsatisfied.

**4. Security.** ☒ This Note is secured by real estate under agreement(s) dated July 17, 2008 _____ from Elizabeth A Wirth _____ to Lender.
☐ This Note is secured by a dwelling under security agreement(s) dated n/a _____ from n/a _____ to Lender.

**5. Renewal.** ☒ This Note renews and does not satisfy or discharge a note I executed to Lender on July 17, 2008 _____ to Lender.
**6. Automatic Payment.** ☒ I authorize Lender to automatically deduct payments due under this Note from an account I will maintain with Lender. I will keep sufficient funds in the account to pay the full amount of each payment on the date it is due.
**7. Additional Terms.** This Note is subject to the following additional terms:
☐ (a) Any installment paid within na ____ days (not more than 30) prior to or after its due date is considered paid on the due date of the installment solely for purposes of determining interest earned on this Note and not for purposes of determining default or delinquency charges.
(b) Full or partial prepayment of this Note ☒ (i) is permitted at any time without penalty ☐ (ii) na
na

Upon prepayment in full, unearned interest will be refunded to the extent required by law. Lender may apply prepayments to such future installments as it elects.
**8. For Wisconsin residents only:** I, Elizabeth A Wirth _____, am ☒ married ☐ unmarried ☐ legally separated. If I am married and my spouse is not signing below, the name of my spouse is (NAME) Daniel J Hammeter _____ and my spouse resides at ☒ the address shown below or at ☐ n/a

**VARIABLE RATE DISCLOSURES**
If section 2(c) above is checked, this Note contains a variable interest rate provision. The following disclosures are applicable if this Note is secured by a first lien real estate mortgage or equivalent security interest on a one-to-four family dwelling used as my principal place of residence. An increase or decrease in the Index Rate described above will cause a corresponding increase or decrease in the rate of interest, and the current Index Rate value is ____ n/a ____ %. Except for payment of the prepayment penalty described in section 7(b)(ii) above, if any, I may prepay this Note in whole or in part at any time without penalty. Unless this Note is secured by an equivalent security interest as described above, notice of any interest rate increase must be given to me.

I acknowledge receipt of a completed copy of this Note. "I", "my" and "me" includes each person who signs this Note and our obligations are joint and several. This note includes the Additional Provisions on page 2.

X _Elizabeth A Wirth_ (SEAL)     X _____ (SEAL)
Elizabeth A Wirth

N77 W6825 Pine St _____     X _____ (SEAL)
(Customer Address)

Cedarburg, WI 53012-9148 _____     X _____ (SEAL)

R-1
Coll: Vacation home in Calumet Co _____ FOR LENDER CLERICAL USE ___ Lois Boeskool _____

June 23, 2014

## AGREEMENT
Note # ¯ ¯ ¯

This Agreement is between Port Washington State Bank, 206 N. Franklin Street, Port Washington, Wisconsin 53074 (herein after known as "Lender") and Elizabeth A. Wirth (herein after known as "Maker").

This Agreement concerns the terms of a Mortgage Note executed between the parties dated July 17, 2013 in the original amount of $27,927.19.

**Lender and Maker hereby agree to amend only the following terms of the note agreement:**

The payment due date on the Note is hereby amended to the 4th of each month, beginning July 4, 2014 and monthly thereafter.

All other terms and conditions of the existing note are hereby confirmed and remain unchanged.

Date: 7-1-14

_____
Elizabeth A. Wirth

_____
Meghan Bode, Personal Banker
Port Washington State Bank

CONSUMER Second Mortgage          PORT WASHINGTON STATE BANK          8/23/2018 1:11:09 PM
Residential
Printed by: LINA VORPAHL                                              Reporting Institution: 27

## *Note*          *- ELIZABETH A WIRTH*

|  | Relationship | Date of Birth | Phone Number | Tax Identification |
|---|---|---|---|---|
| ⊞  ELIZABETH A WIRTH | Owner/Signer | | | |

◉  988 KNOLLWOOD RD
WEST BEND WI 53095-9999

Additional Relationships

## *Account Classification*

| | | | |
|---|---|---|---|
| Portfolio: | 133978 | Responsibility Code: | [78] LOIS ROESKE |
| Line: | 133978 | Purpose Code: | [2] BALLOON NOTE |
| Product: | [4371] CONSUMER Second Mortgage Residential | Employee Officer Director: | [0] |
| Accounting Branch: | [9] PWS - Cedarburg | Collateral: | 988 KNOLLWOOD DR WEST BEND WI 53095 |

## *Warnings*

Collection

Past Due

Status: [23] CHAPTER 13 FILED

Advance Restriction Code: Non-Post All

Matured Note

## *Priority Miscellaneous*

### Description

⊞  10/11/10 Rate changed to 3.99 efective 9/17/10 new payment is 187.81 cb

⊞  12/16/10 LV-PER NEW AUTO PAY FORM DATED 12/15/10 CUSTOMER WOULD LIKE PAYMENT AMOUNT TO CHANGE TO $187.81

⊞  7/3/14 - PER AGREEMENT CHANGED PAYMENT DUE DATE TO THE 4TH OF THE MONTH, STARTING 7/4/14. ASN

## *Summary*

| | | | |
|---|---|---|---|
| Principal Balance: | $20,756.51 | Interest Method: | [1] 365/365 Payments P&I |
| Interest Balance: | $188.32 | Current Payment Due Date: | Jul 04, 2018 |
| Net Payoff: | $21,074.83 | Current Payment Due Amount: | $20,944.83 |
| Current Other Escrow Balance: | $0.00 | Date Last Payment: | Jun 01, 2018 |
| Current Late Charge Balance: | $100.00 | Amount Last Payment: | $206.48 |
| Current Other Escrow Interest Balance: | $0.00 | Current Days Past Due: | 50 |
| Book Balance: | | Total Amount Due: | $21,044.83 |
| Total Collateral Value: | $0.00 | Total Amount Past Due: | $20,944.83 |
| Pledge LTV: | Secured | Payment Frequency: | Monthly |
| Payments Scheduled: | 49 | Regular Payment Amount: | $206.48 |
| Payments Billed: | 49 | Current Rate Over: | 3.990000 |
| Payments Made: | 48 | One Day's Interest: | $2.2689 |
| Times Extended: | | Current Yield: | 3.990000 |

EXHIBIT   2

W. B. A.  GP 428 (3/05)  11142
© 2005 Wisconsin Bankers Association / Distributed by FIPCO®

DOCUMENT NO.

**REAL ESTATE MORTGAGE**
(Use For Consumer or Business Transactions)

Mary Joan Wirth, Elizabeth Ann Hammetter, John Clifford Wirth and Kristin Ellen
Eickhorst f/k/a Kristin Ellen Wirth, as tenants in common

_____ ("Mortgagor,"
whether one or more) mortgages, conveys, assigns, grants a security interest in and
warrants to Port Washington State Bank - Grafton
2080 Washington Street, Grafton, WI 53024
("Lender") in consideration of the sum of _____
Thirty Two Thousand Eight Hundred Twenty Eight and 83/100
_____ Dollars
($32,828.83 ), loaned or to be loaned to Elizabeth A Wirth

_____ ("Borrower," whether one or more) by Lender,
evidenced by Borrower's note(s) or agreement(s) dated July 17, 2008

the real estate described below, together with all privileges, hereditaments, easements and
appurtenances, all rents, leases, issues and profits, all claims, awards and payments made
as a result of the exercise of the right of eminent domain, and all existing and future
improvements and fixtures (all called the "Property") to secure the Obligations described in
paragraph 5 on page 2, including, but not limited to, repayment of the sum stated above
plus certain other debts, obligations and liabilities arising out of past, present and future
credit granted by Lender. **SINCE THIS MORTGAGE SECURES ALL OBLIGATIONS
DESCRIBED IN PARAGRAPH 5 ON PAGE 2, IT IS ACKNOWLEDGED AND AGREED
THAT THIS MORTGAGE MAY SECURE OBLIGATIONS FROM TIME TO TIME IN A
DOLLAR AMOUNT GREATER THAN THE DOLLAR AMOUNT STATED ABOVE.**

**1. Description of Property.** (This Property is not ___ the homestead of Mortgagor.)

DOC# 1197275

Recorded
July 22, 2008 AT 09:30AM
SHARON A MARTIN, REGISTER OF DEEDS
WASHINGTON COUNTY, WISCONSIN

Fee Amount:    $15.00

Recording Area                          5-3

Name and Return Address
Port Washington State Bank

206 N Franklin St   P.O. Box 176
Port Washington WI 53074  99984

T11-0594 and T11-0595
_____
Parcel Identifier No.

☒ If checked here, description continues or appears on attached sheet(s).
☐ If checked here, this Mortgage is a construction mortgage.
☐ If checked here, Condominium Rider is attached.

☐ If checked here, and not in limitation of paragraph 5 on page 2, this
Mortgage is also given to secure all sums advanced and re-advanced to
Borrower by Lender from time to time under the revolving credit agreement
between Borrower and Lender described above.

**2. Title.** Mortgagor warrants title to the Property, excepting only restrictions and easements of record, municipal and zoning ordinances, current taxes
and assessments not yet due and_____

**3. Escrow. Interest** will not be paid on escrowed funds if an escrow is required under paragraph 8(a) on page 2.

**4. Additional Provisions.** Mortgagor agrees to the Additional Provisions on page 2, which are incorporated in this Mortgage.
The undersigned acknowledges receipt of an exact copy of this Mortgage.

NOTICE TO CUSTOMER IN A TRANSACTION GOVERNED BY THE WISCONSIN CONSUMER ACT
(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON PAGE 2, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE
ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Signed and Sealed July 17, 2008 _____.
                              (Date)

_____ (SEAL)

_____
(Type of Organization)

By:_____ (SEAL)      _Mary Joan Wirth_ (SEAL)
                                         Mary Joan Wirth

By:_____ (SEAL)      _Elizabeth A Wirth_ (SEAL)
                                         Elizabeth A Wirth A/K/A Elizabeth Ann Hammetter

By:_____ (SEAL)      _____ (SEAL)
                                         John Clifford Wirth

By:_____ (SEAL)      _Kristin Ellen Wirth_ (SEAL)
                                         Kristin Ellen Eickhorst F/K/A Kristin Ellen Wirth

━━━━━ **AUTHENTICATION** ━━━━━  OR  ━━━━━ **ACKNOWLEDGEMENT** ━━━━━

Signatures of_____          STATE OF Wisconsin ⎫ ss.
_____       County of Ozaukee  ⎭
_____
                                              This instrument was acknowledged before me on July 17, 2008
authenticated this _____ day of_____        by Mary Joan Wirth, Elizabeth A Wirth, John Clifford Wirth and Kristin
                                              Ellen Eickhorst
_____                    (Name(s) of persons(s))
*
_____       as n/a
Title: Member State Bar of Wisconsin or_____              (Type of authority, e.g., officer, trustee, etc., if any)
authorized under 8 706.06, Wis. Stats.        of n/a
This instrument was drafted by                             (Name of party on behalf of whom instrument was executed, if any)
Sharon J Irwin/og                             *Sharon J Irwin

                                              Notary Public, Wisconsin
*Type or print name signed above.            My Commission (Expires)   May 8, 2011

EXHIBIT 3

Real Estate Mortgage
PAGE 1

## ADDITIONAL PROVISIONS

**5. Mortgage as Security.** This Mortgage secures prompt payment to Lender of (a) the sum stated in the first paragraph of this Mortgage on page 1, plus interest and charges, according to the terms of the promissory note(s) or agreement(s) of Borrower to Lender identified on page 1, and any extensions, renewals or modifications of such promissory note(s) or agreement(s), plus (b) to the extent not prohibited by the Wisconsin Consumer Act, if applicable, all other debts, obligations and liabilities arising out of credit previously granted, credit contemporaneously granted and credit granted in the future by Lender to any Mortgagor, to any Mortgagor and another or to another guaranteed or endorsed by any Mortgagor, plus all interest and charges, plus (c) to the extent not prohibited by the Wisconsin Consumer Act or Chapter 428, Wisconsin Statutes, if applicable, all costs and expenses of collection or enforcement (all called the "Obligations"). This Mortgage also secures the performance of all covenants, conditions and agreements contained in this Mortgage. Unless otherwise required by law, Lender will satisfy this Mortgage upon request by Mortgagor if (a) the Obligations have been paid according to their terms, (b) any commitment to make future advances secured by this Mortgage has terminated, (c) Lender has terminated any line of credit under which advances are to be secured by this Mortgage, and (d) all other payments required under this Mortgage and the Obligations and all other terms, conditions, covenants, and agreements contained in this Mortgage and the documents evidencing the Obligations have been paid and performed.

**6. Taxes.** To the extent not paid to Lender under paragraph 8(a), Mortgagor shall pay before they become delinquent all taxes, assessments and other charges which may be levied or assessed against the Property, against Lender upon this Mortgage or the Obligations or other debt secured by this Mortgage, or upon Lender's interest in the Property, and deliver to Lender receipts showing timely payment.

**7. Insurance.** Mortgagor shall keep the improvements on the Property insured against direct loss or damage occasioned by fire, flood, extended coverage perils and such other hazards as Lender may require, through insurers reasonably satisfactory to Lender, in amounts, without co-insurance, not less than the unpaid balance of the Obligations or the full replacement value, whichever is less, and shall pay the premiums when due. The policies shall contain the standard mortgage and Lender loss payee clauses in favor of Lender, shall insure Lender notwithstanding any defenses of the insurer against Mortgagor and, unless Lender otherwise agrees in writing, the original of all policies covering the Property shall be deposited with Lender. Subject to Lender's satisfaction, Mortgagor is free to select the insurance agent or insurer through which insurance is obtained. Mortgagor shall promptly give notice of loss to insurance companies and Lender. All proceeds from such insurance shall be applied, at Lender's option, to the installments of the Obligations (in the inverse order of their maturities (without penalty for prepayment)) or to the restoration of the improvements on the Property. In the event of foreclosure of this Mortgage or other transfer of title to the Property, in extinguishment of the indebtedness secured hereby, all right, title, and interest of Mortgagor in and to any insurance then in force shall pass to the purchaser or grantee. If Mortgagor fails to keep any required insurance on the Property, Lender may purchase such insurance for Mortgagor, such insurance may be acquired by Lender solely to protect the interest of Lender (it will not cover Mortgagor's equity in the Property), and Mortgagor's obligation to repay Lender shall be in accordance with Section 10.

**8. Mortgagor's Covenants.** Mortgagor covenants:

**(a) Escrow.** If an escrow is required by Lender, to pay Lender sufficient funds, at such times as Lender designates, to pay when due (1) the estimated annual real estate taxes and assessments on the Property, (2) all property and hazard insurance premiums, (3) flood insurance premiums, if any, (4) if payments owed under the Obligations are guaranteed by mortgage guaranty insurance, the premiums necessary to pay for such insurance, and (5) other items agreed to be included in the escrow. Lender may, at any time, collect and hold such amounts to Mortgagor, Lender may deal with any transferee as to its interest in the same manner as with Mortgagor, without in any way discharging the liability of Mortgagor under this Mortgage or the Obligations. applicable. Lender may estimate the amount of escrow funds due on the basis of current data and reasonable estimates of future expenditures of future escrow account funds or as otherwise required by applicable law. Lender shall apply the escrowed funds against taxes, assessments and insurance premiums when due or as otherwise required by law. Escrowed funds may be commingled with Lender's general funds. If the escrowed funds held by Lender exceed the amount permitted to be held by applicable law, Lender shall account to Mortgagor for the excess escrowed funds in a manner determined by Lender or as otherwise required by applicable law. If the escrowed funds held by Lender at any time are not sufficient to pay the escrow account items when due, Lender may notify Mortgagor in writing, and Mortgagor shall pay to Lender the amount necessary to make up the deficiency in a manner determined by Lender or as otherwise required by applicable law;

**(b) Condition and Repair.** To keep the Property in good and tenantable condition and repair, and to restore or replace damaged or destroyed improvements and fixtures;

**(c) Liens.** To keep the Property free from liens and encumbrances superior to the lien of this Mortgage and not described in paragraph 2 on page1;

**(d) Other Mortgages.** To perform all of Mortgagor's obligations and duties under any other mortgage or security agreement on the Property and any obligation to pay secured by such a mortgage or security agreement;

**(e) Waste.** Not to commit waste or permit waste to be committed upon the Property;

**(f) Conveyance.** Not to sell, assign, lease, mortgage, convey or otherwise transfer any legal or equitable interest in all or part of the Property, or permit the same to occur without the prior written consent of Lender and, without notice to Mortgagor, Lender may deal with any transferee as to its interest in the same manner as with Mortgagor, without in any way discharging the liability of Mortgagor under this Mortgage or the Obligations;

**(g) Alteration or Removal.** Not to remove, demolish or materially alter any part of the Property, without Lender's prior written consent, except Mortgagor may remove a fixture, provided the fixture is promptly replaced with another fixture of at least equal utility;

**(h) Condemnation.** To pay to Lender all compensation received for the taking of the Property, or any part, by condemnation proceeding (including payments in compromise of condemnation proceedings), and all compensation received as damages for injury to the Property, or any part. The compensation shall be applied in such manner as Lender determines to rebuilding of the Property or to the Obligations in the inverse order of their maturities (without penalty for prepayment);

**(i) Inspection.** Lender and its authorized representatives may enter the Property at reasonable times to inspect it, and at Lender's option to repair or restore the Property and to conduct environmental assessments and audits of the Property;

**(j) Laws.** To comply with all laws, ordinances and regulations affecting the Property; and

**(k) Subrogation.** That Lender is subrogated to the lien of any mortgage or other lien discharged, in whole or in part, by the proceeds of the note(s) or agreement(s) identified on page 1.

**9. Environmental Laws.** Mortgagor represents, warrants and covenants to Lender (a) that during the period of Mortgagor's ownership or use of the Property no substance has been, is or will be present, used, stored, deposited, treated, recycled or disposed of on, under, in or about the Property in a form, quantity or manner which if known to be present on, under, in or about the Property would require clean-up, removal or some other remedial action ("Hazardous Substance") under any federal, state or local laws, regulations, ordinances, codes or rules ("Environmental Laws"); (b) that Mortgagor has no knowledge, after due inquiry, of any prior use or existence of any Hazardous Substance on the Property by any prior owner of or person using the Property; (c) that, without limiting the generality of the foregoing, Mortgagor has no knowledge, after due inquiry, that the Property contains asbestos, polychlorinated biphenyl components (PCBs) or underground storage tanks; (d) that there are no conditions existing currently or likely to exist during the term of this Mortgage which would subject Mortgagor to any damages, penalties, injunctive relief or clean-up costs in any governmental or regulatory action or third-party claims relating to any Hazardous Substance; (e) that Mortgagor is not subject to any court or administrative proceeding, judgment, decree, order or citation relating to any Hazardous Substance; and (f) that Mortgagor in the past has been, at the present is, and in the future will remain in compliance with all Environmental Laws. Mortgagor shall indemnify and hold harmless Lender, its directors, officers, employees and agents from all loss, cost (including reasonable attorneys' fees and legal expenses), liability and damage whatsoever directly or indirectly resulting from, arising out of, or based upon (i) the presence, use, storage, deposit, treatment, recycling or disposal, at any time, of any Hazardous Substance on, under, in or about the Property, or the transportation of any Hazardous Substance to or from the Property, (ii) the violation or alleged violation of any Environmental Law, permit, judgment or license relating to the presence, use, storage, deposit, treatment, recycling or disposal of any Hazardous Substance on, under, in or about the Property, or the transportation of any Hazardous Substance to or from the Property, or (iii) the imposition of any governmental lien for the recovery of environmental clean-up costs expended under any Environmental Law. Mortgagor shall immediately notify Lender in writing of any governmental or regulatory action or third-party claim instituted or threatened in connection with any Hazardous Substance on, in, under or about the Property.

**10. Authority of Lender to Perform for Mortgagor.** If Mortgagor fails to perform any of Mortgagor's duties set forth in this Mortgage with respect to preserving or insuring the Property, Lender may after giving Mortgagor notice and opportunity to perform which are required by law, perform the covenants or duties or cause them to be performed, including without limitation signing Mortgagor's name or paying any amount so required, and the cost shall be due on demand and secured by this Mortgage, bearing interest at the highest rate stated in any document evidencing an Obligation, but not in excess of the maximum rate permitted by law, from the date of expenditure by Lender to the date of payment by Mortgagor.

**11. Default; Acceleration; Remedies.** If (a) there is a default under any Obligation secured by this Mortgage, or (b) Mortgagor fails timely to observe or perform any of Mortgagor's covenants or duties contained in this Mortgage, then, at the option of Lender each Obligation will become immediately due and payable unless notice to Mortgagor or Borrower and an opportunity to cure are required by § 425.105, Wis. Stats., if applicable, or the document evidencing the Obligation and, in that event, the Obligation will become due and payable if the default is not cured as provided in that statute or the document evidencing the Obligation or as otherwise provided by law. If Lender exercises its option to accelerate, the unpaid principal and interest owed on the Obligation, together with all sums paid by Lender as authorized or required under this Mortgage or any Obligation, shall be collectible in a suit at law or by foreclosure of this Mortgage by action, or both, or by the exercise of any other remedy available at law or equity.

**12. Waiver.** Lender may waive any default without waiving any other subsequent or prior default by Mortgagor.

**13. Power of Sale.** In the event of foreclosure, Lender may sell the Property at public sale and execute and deliver to the purchasers deeds of conveyance pursuant to statute.

**14. Assignment of Rents and Leases.** Mortgagor conveys, assigns and transfers to Lender, as additional security for the Obligations, all leases of all or any part of the Property, whether oral or written, now or hereafter entered into by Mortgagor, together with any and all extensions and renewals of any leases, and all rents which become or remain due or are paid under any agreement or lease for the use or occupancy of any part or all of the Property. Until the occurrence of an event of default under this Mortgage or any Obligation, Mortgagor has the license to collect the rents, issues and profits (the "Rents") from the Property. To the extent not prohibited by the Wisconsin Consumer Act, if applicable, upon or at any time after the occurrence of such an event of default and continuation of any applicable cure period described in paragraph 11 above, and lapse of any applicable grace, notice or cure period provided in any document evidencing such Obligation, the license granted Mortgagor to collect the Rents shall automatically and immediately terminate and Mortgagor shall hold all Rents paid to Mortgagor thereafter in trust for the use and benefit of Lender, and Lender may, at its option, without any further notice, either in person or by agent, with or without taking possession of or entering the Property, with or without bringing any action or proceeding, or by a receiver to be appointed by a court, collect all of the Rents payable under the leases, enforce the payment of the Rents and exercise all of the rights of Mortgagor under the leases and all of the rights of Lender under this Mortgage. All such payments shall be applied in such manner as Lender determines to payments required under this Mortgage and the Obligations. To the extent not prohibited by the Wisconsin Consumer Act, if applicable, this assignment shall be enforceable and Lender shall be entitled to take any action to enforce the assignment (including notice to the tenants to pay directly to Lender or the commencement of a foreclosure action) without seeking or obtaining the appointment of a receiver or possession of the Property. Entering upon and taking possession of the Property, any collection of Rents, and any application of Rents as allowed by this Mortgage shall not cure or waive any default or waive, modify or affect notice of default under this Mortgage or invalidate any act done pursuant to such notice, and not in any way operate to prevent Lender from pursuing any other remedy which it now or hereafter may have under the terms or conditions of this Mortgage, any document evidencing any Obligation or any other instrument securing the Obligations.

**15. Receiver.** Upon the commencement or during the pendency of an action to foreclose this Mortgage, or enforce any other remedies of Lender under it, without regard to the adequacy or inadequacy of the Property as security for the Obligations, Mortgagor agrees that the court may appoint a receiver of the Property (including homestead interest) without bond, and may empower the receiver to take possession of the Property and collect the rents, issues and profits of the Property and exercise such other powers as the court may grant until the confirmation of sale, and may order the rents, issues and profits, when so collected, to be held and applied as the court may direct.

**16. Foreclosure Without Deficiency Judgment.** If the Property is a one-to-four family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Mortgagor agrees to the provisions of § 846.101, Wis. Stats., and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one-to-four family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Mortgagor agrees to the provisions of §846.103, Wis. Stats., and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**17. Expenses.** To the extent not prohibited by the Wisconsin Consumer Act or Chapter 428, Wisconsin Statutes, if applicable, Mortgagor shall pay all reasonable costs and expenses before and after judgment, including without limitation, attorneys' fees, fees and expenses for environmental assessments, inspections and audits, and fees and expenses for obtaining title evidence incurred by Lender in protecting or enforcing its rights under this Mortgage.

**18. Successors and Assigns.** The obligations of all Mortgagors are joint and several. This Mortgage benefits Lender, its successors and assigns, and binds Mortgagor(s) and their respective heirs, personal representatives, successors and assigns.

**19. Interpretation.** The validity, construction and enforcement of this Mortgage are governed by the internal laws of Wisconsin except to the extent such laws are preempted by federal law. All references in this Mortgage to sections of the Wisconsin Statutes are to those sections as they may be renumbered from time to time. Invalidity of any provision of this Mortgage will not affect the validity of any other provision. This Mortgage is intended by Mortgagor and Lender as a final expression of this Mortgage and as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Mortgage. This Mortgage may not be supplemented or modified except in writing.

Real Estate Mortgage
PAGE 2

Legal Description:

The Northwest 1/4 of the Southeast 1/4 of Section 22, Township 11 North of Range 20 East, Town of Trenton, Washington County, Wisconsin. AND The Southwest 1/4 of the Southeast 1/4 of Section 22, Township 11 North of Range 20 East, Town of Trenton, Washington County, Wisconsin. EXCEPTING THEREFROM the following described parcel, to-wit: Part of the West 1/2 of the Southeast 1/4 of Section 22, Township 11 North, Range 20 East, Town of Trenton, Washington County, Wisconsin, and being described as: Commencing at the southwest corner of said W 1/2 of said SE 1/4; thence South 86°57' East, 474.00 feet along the south line of said Section 22 to the point of beginning; thence continuing South 86°57' East 751.33 feet to a point 100.00 feet West of the Southeast corner of said West 1/2 of SE 1/4; thence North 492.81 feet; thence North 86°57' West, 751.33 feet; thence South 492.81 feet to the point of beginning.

Tax Key No#: T11-0594 and T11-0595